

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    v.

D-1 JOHNNY TROTTER, II, M.D.,
D-2 ANDREW HARDY, JR., M.D.,
D-3 ELAINE LOVETT, and
D-4 MICHELLE FREEMAN,

                Defendants.

_____/

Case:2:14-cr-20273
Judge: Steeh, George Caram
MJ: Grand, David R.
Filed: 05-08-2014 At 04:13 PM
SEALED MATTER (LG)

VIO:  18 U.S.C. § 1349
       18 U.S.C. § 1347
       18 U.S.C. § 2
       18 U.S.C. § 981
       18 U.S.C. § 982

## **INDICTMENT**

THE GRAND JURY CHARGES:

## **General Allegations**

At all times relevant to this Indictment:

### **The Medicare Program**

1.    The Medicare program was a federal health care program providing

benefits to persons who were over the age of 65 or disabled.  Medicare was

administered by the Centers for Medicare and Medicaid Services ("CMS"), a

federal agency under the United States Department of Health and Human Services.

Individuals who received benefits under Medicare were referred to as Medicare

"beneficiaries."

2.    Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.    The Medicare program included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Part B of the Medicare program covered the cost of physicians' services, medical equipment and supplies, and other ancillary services not covered by Part A. Specifically, Part B covered medically necessary services involving physician office services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections. The medical services at issue in this Indictment were covered by Part B.

4.    Wisconsin Physicians Service ("WPS") administered the Medicare Part B program for claims arising in the State of Michigan. CMS contracted with WPS to receive, adjudicate, process, and pay certain Part B claims, including medical services related to physician office services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections.

5.    TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the State of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC.

6.    Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary. This

2

payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7.      Upon certification, the medical provider, whether a clinic, physician, or other health care provider that provided services to Medicare beneficiaries, was able to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services. When an individual medical provider was associated with a clinic and medically necessary services were provided at that clinic's location, Medicare Part B required that the individual provider numbers associated with the clinic be placed on the claim submitted to the Medicare contractor.

8.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all

3

provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.  Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9.      Health care providers could only submit claims to Medicare for services they rendered.  Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician.  Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form.  These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider.

10.      Under Medicare Part B, physician office visit services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury.  Individuals providing these services were required to have the appropriate training, qualifications, and licenses

4

to provide such services.  Providers were required to:  (1) document the medical necessity of these services, (2) document the date the service was performed, (3) identify the provider who performed the service, and (4) identify the clinic, physician office, or group practice where the provider provided the service.  To be reimbursed from Medicare for physician office visit services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.  Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicare.

11.    When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

12.    To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

### The Physician Businesses

13.    John R. Trotter II, M.D., Medical Services. P.L.L.C. ("Trotter Medical Services") was a Michigan corporation doing business at 20905

5

Greenfield Road, Suite 303, Southfield, Michigan and 17401 W 12 Mile Road, Lathrup Village, Michigan. Trotter Medical Services was enrolled as a participating provider with Medicare and submitted claims to Medicare.

14.     Grace Family Health Center, P.C. ("Grace") was a Michigan corporation doing business at 20905 Greenfield Road, Suite 303, Southfield, Michigan and 4910 Cadieux Road, Detroit, Michigan. Grace was enrolled as a participating provider with Medicare and submitted claims to Medicare.

15.     Southfield Family Medical Center P.C. ("Southfield") was a Michigan corporation doing business at 17401 W 12 Mile Road, Lathrup Village, Michigan. Southfield was enrolled as a participating provider with Medicare and submitted claims to Medicare.

16.     Advanced Medical Services PLLC ("Advanced Medical") was a Michigan corporation doing business at 23300 Greenfield Road, Suite 205C, Oak Park, Michigan. Advanced Medical was enrolled as a participating provider with Medicare and submitted claims to Medicare.

17.     Advanced Therapeutic Medical Services P.L.L.C. ("Advanced Therapeutic") was a Michigan corporation doing business at 20905 Greenfield Road, Suite 205, Southfield, Michigan. Advanced Therapeutic was enrolled as a participating provider with Medicare and submitted claims to Medicare.

18.     Capital Administrative Management Solutions LLC ("Capital Administrative") was a Michigan corporation doing business at 22100 Greenfield Road, Suite B, Oak Park, Michigan.  Capital Administrative was enrolled as a participating provider with Medicare and submitted claims to Medicare.

19.     Comprehensive Administrative Management Solutions LLC ("Comprehensive Administrative") was a Michigan corporation doing business at 23999 Northwestern Highway, Suite 2208, Southfield, Michigan and 29566 Northwestern Highway, Suite 200, Southfield, Michigan.  Comprehensive Administrative was enrolled as a participating provider with Medicare and submitted claims to Medicare.

20.     Delta Administrative Management Solutions ("Delta Administrative") was a Michigan corporation doing business at 23300 Greenfield Road, Suite 105B, Oak Park, Michigan.  Delta Administrative was enrolled as a participating provider with Medicare and submitted claims to Medicare.

21.     Lilian Lai, M.D., P.C. ("Lilian Lai") was a Michigan corporation doing business at 15129 Kercheval, Grosse Pointe Park, Michigan and 15850 E Warren Avenue, Detroit, Michigan.  Lilian Lai was enrolled as a participating provider with Medicare and submitted claims to Medicare.

22.     Professional Administrative Management Solutions LLC ("Professional Administrative") was a Michigan corporation doing business at

7

24011 Greenfield Road, Suite B, Southfield, Michigan. Professional

Administrative was enrolled as a participating provider with Medicare and

submitted claims to Medicare.

     23.    St. Joseph Medical Center, P.C. ("St. Joseph Medical") was a

Michigan corporation doing business at 29566 Northwestern Highway, Suite 200,

Southfield, Michigan and 17950 Woodward Avenue, Detroit, Michigan. St.

Joseph Medical was enrolled as a participating provider with Medicare and

submitted claims to Medicare.

     24.    Surburban LLC ("Surburban") was a Michigan corporation doing

business at 20905 Greenfield Road, Suite 303B, Southfield, Michigan and 20905

Greenfield Road, Suite 203, Southfield, Michigan. Surburban was enrolled as a

participating provider with Medicare and submitted claims to Medicare.

     25.    Total Administrative Management Solutions LLC ("Total

Administrative") was a Michigan corporation doing business at 23300 Greenfield

Road, Suite 203C, Oak Park, Michigan. Total Administrative was enrolled as a

participating provider with Medicare and submitted claims to Medicare.

     26.    Virginia Park Medical Services, P.L.L.C. ("Virginia Park") was a

Michigan corporation doing business at 8500 14th Street, Detroit, Michigan.

Virginia Park was enrolled as a participating provider with Medicare and submitted

claims to Medicare.

8

27.     Virginia Park Medical Center Professional Corporation ("Virginia Park 2") was a Michigan corporation doing business at 8500 14th Street, Detroit, Michigan.  Virginia Park 2 was enrolled as a participating provider with Medicare and submitted claims to Medicare.

## The Billing Company

28.     Abix, LLC ("Abix") was a Michigan corporation doing business at 21910 Greenfield Road, Oak Park, Michigan.  Abix was a health care billing company that provided credentialing and billing services for Medicare enrolled providers.

## The Defendants

29.     Defendant JOHNNY TROTTER, II, M.D., a resident of Oakland County, was a physician licensed in the State of Michigan who was enrolled as a participating provider with Medicare.  JOHNNY TROTTER, II, M.D. owned and controlled Trotter Medical Services, Grace, and Southfield.  JOHNNY TROTTER, II, M.D. controlled Advanced Medical, Advanced Therapeutic, Capital Administrative, Comprehensive Administrative, Delta Administrative, Lilian Lai, Professional Administrative, St. Joseph Medical, Surburban, Total Administrative, Virginia Park, and Virginia Park 2 (collectively referred to as the "Trotter Controlled Entities").  JOHNNY TROTTER, II, M.D. used the Medicare provider numbers of Trotter Medical Services, Grace, Southfield, and the Trotter Controlled

9

Entities to bill Medicare for purported physician office visit services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections purportedly provided to Medicare beneficiaries in Michigan.

30.   Defendant ANDREW HARDY, JR., M.D., a resident of Wayne County, was an unlicensed physician in the State of Michigan whose license was suspended in or around July 2002 and revoked in January 2008. ANDREW HARDY, JR., M.D. was excluded from participation in the federal health care programs in November 2002. Following suspension and revocation of his license, ANDREW HARDY, JR., M.D. held himself out as a licensed physician in the State of Michigan and purported to provide medical services, including physician office visits, for Grace and the Trotter Controlled Entities to Medicare beneficiaries in Michigan.

31.   Defendant ELAINE LOVETT, a resident of Wayne County, was a co-owner and controller of Abix, which was the billing company that assisted JOHNNY TROTTER, II, M.D. in obtaining the Medicare provider numbers of the Trotter Controlled Entities in Michigan and submitting claims to Medicare for purported medical services provided by Trotter Medical Services, Grace, Southfield, and the Trotter Controlled Entities.

32.   Defendant MICHELLE FREEMAN, a resident of Livingston County, was a co-owner and controller of Abix, which was the billing company that

10

assisted JOHNNY TROTTER, II, M.D. in obtaining the Medicare provider

numbers of the Trotter Controlled Entities in Michigan and submitting claims to

Medicare for purported medical services provided by Trotter Medical Services,

Grace, Southfield, and the Trotter Controlled Entities.

**COUNT 1**
**(18 U.S.C. § 1349—Health Care Fraud Conspiracy)**
**D-1 JOHNNY TROTTER, II, M.D.**
**D-2 ANDREW HARDY, JR., M.D.**
**D-3 ELAINE LOVETT**
**D-4 MICHELLE FREEMAN**

33.     Paragraphs 1 through 32 of the General Allegations section of this

Indictment are re-alleged and incorporated by reference as though fully set forth

herein.

34.     From in or around May 2008, and continuing through the present, the

exact dates being unknown to the Grand Jury, in Wayne and Oakland Counties, in

the Eastern District of Michigan, and elsewhere, the defendants, JOHNNY

TROTTER, II, M.D., ANDREW HARDY, JR., M.D., ELAINE LOVETT, and

MICHELLE FREEMAN, did willfully and knowingly combine, conspire,

confederate, and agree with each other and others, known and unknown to the

Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to

execute a scheme and artifice to defraud a health care benefit program affecting

commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, and to obtain, by means of materially false and fraudulent pretenses,

11

representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

35.    It was a purpose of the conspiracy for defendants JOHNNY TROTTER, II, M.D., ANDREW HARDY, JR., M.D., ELAINE LOVETT, MICHELLE FREEMAN, and others to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare for physician office visits and other services; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

36.    JOHNNY TROTTER, II, M.D., a physician licensed in the State of Michigan, would submit and cause to be submitted applications to Medicare to become a Medicare provider as the owner of Trotter Medical Services and Grace.

37.    ELAINE LOVETT and MICHELLE FREEMAN would incorporate

12

Abix, LLC on or about July 26, 2006.

38.     JOHNNY TROTTER, II, M.D. would operate and control the day-to-day operations at Trotter Medical Services, Grace, and Southfield.

39.     ELAINE LOVETT and MICHELLE FREEMAN would operate and control the day-to-day operations at Abix.

40.     JOHNNY TROTTER, II, M.D., ELAINE LOVETT, MICHELLE FREEMAN, and others would submit and cause the submission of false and fraudulent claims for services purportedly provided by Trotter Medical Services and Grace that were medically unnecessary and not provided.

41.     Medicare placed Trotter Medical Services on prepayment review on March 30, 2009, Medicare placed Grace on prepayment review on June 12, 2009, and Medicare placed Southfield on prepayment review on June 30, 2009.

42.     JOHNNY TROTTER, II, M.D. purchased existing Medicare provider numbers from other Medicare providers and contracted with other Medicare providers to use their Medicare provider numbers.  The Medicare provider numbers that JOHNNY TROTTER, II, M.D. purchased and contracted to use belonged to the Trotter Controlled Entities and other Medicare providers.

43.     JOHNNY TROTTER, II, M.D., ELAINE LOVETT, MICHELLE FREEMAN, and others did not disclose to Medicare that JOHNNY TROTTER, II,

13

M.D. was submitting and causing to be submitted claims under the Trotter

Controlled Entities and other Medicare providers.

44.    JOHNNY TROTTER, II, M.D., ELAINE LOVETT, and MICHELLE

FREEMAN and others would submit, and cause the submission of false and

fraudulent claims to Medicare under the Medicare provider numbers of the Trotter

Controlled Entities and other Medicare providers to further the fraud and to

conceal the fraudulent billings from detection.

45.    ANDREW HARDY, JR., M.D. would hold himself out as a licensed

medical doctor and purported to perform medical services, including physician

office visits, for Medicare beneficiaries, although ANDREW HARDY, JR., M.D.

was not licensed to practice medicine in Michigan and was excluded from

participation in Medicare and all other federal health care programs.

46.    JOHNNY TROTTER, II, M.D. would hire ANDREW HARDY, JR.,

M.D. to prepare medical documentation purportedly evidencing medical services

provided to beneficiaries, when the beneficiaries were not treated by a physician

licensed in the State of Michigan.  JOHNNY TROTTER, II, M.D. and other

physicians would sign the medical documentation completed by ANDREW

HARDY, JR., M.D. as if they had provided services to the beneficiaries, when they

had not.

14

47.     ANDREW HARDY, JR., M.D. saw patients at the Grace location, however, JOHNNY TROTTER, II, M.D., ELAINE LOVETT, and MICHELLE FREEMAN submitted and caused the submission of claims to Medicare for these purported services through the Medicare provider numbers of the Trotter Controlled Entities and other Medicare providers.

48.     JOHNNY TROTTER, II, M.D., ANDREW HARDY, JR., M.D., ELAINE LOVETT, MICHELLE FREEMAN, and others would submit and cause the submission of false claims to Medicare for services not rendered and not medically necessary, including by: (a) billing for medical services that were provided by an unlicensed physician who was excluded from Medicare; (b) billing for physician office services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections that were medically unnecessary and not provided; (c) billing for physician office services, outpatient physical therapy services, chiropractic services, psychotherapy services, and nerve block injections under the Medicare provider numbers of the Trotter Controlled Entities when the purported services were not provided by those Medicare providers and were not provided at the practice location those Medicare providers submitted to Medicare.

49.     From in or around May 2008, and continuing through the present, JOHNNY TROTTER, II, M.D., ANDREW HARDY, JR., M.D., ELAINE

LOVETT, MICHELLE FREEMAN, and other co-conspirators would cause Trotter

Medical Services, Southfield, Grace, and the Trotter Controlled Entities to submit

approximately $28.5 million in claims to Medicare.

**COUNTS 2–4**
**(18 U.S.C. §§ 1347 and 2—Health Care Fraud)**
**D-1 JOHNNY TROTTER, II, M.D.**
**D-3 ELAINE LOVETT**
**D-4 MICHELLE FREEMAN**

50.     Paragraphs 1 through 32 of the General Allegations section of this

Indictment are re-alleged and incorporated by reference as though fully set forth

herein.

51.     On or about the dates enumerated below, in Wayne and Oakland

Counties, in the Eastern District of Michigan, and elsewhere, JOHNNY

TROTTER, II, M.D., ELAINE LOVETT, and MICHELLE FREEMAN, in

connection with the delivery of and payment for health care benefits, items, and

services, did knowingly and willfully execute, and attempt to execute, a scheme

and artifice to defraud a health care benefit program affecting commerce, as

defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to

obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by and under the custody and control of

Medicare, in connection with the delivery of and payment for health care benefits,

items, and services.

16

**Purpose of the Scheme and Artifice**

52.     It was the purpose of the scheme and artifice for JOHNNY

TROTTER, II, M.D., ELAINE LOVETT, and MICHELLE FREEMAN to

unlawfully enrich themselves through the submission of false and fraudulent

Medicare claims for services that were not rendered and not medically necessary.

**The Scheme and Artifice**

53.     Paragraphs 36 through 49 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein as a description of the

scheme and artifice.

**Acts in Execution of the Scheme and Artifice**

54.     On or about the dates specified as to each count below, in Wayne and

Oakland Counties, in the Eastern District of Michigan, and elsewhere, JOHNNY

TROTTER, II, M.D., ELAINE LOVETT, and MICHELLE FREEMAN, in

connection with the delivery of and payment for health care benefits, items, and

services, did knowingly and willfully execute, and attempt to execute, the above-

described scheme and artifice to defraud a health care benefit program affecting

commerce, that is, Medicare, and to obtain, by means of materially false and

fraudulent pretenses, representations, and promises, money and property owned by,

and under the custody and control of said health care benefit program:

17

| Count Defendant(s) | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 2 TROTTER FREEMAN LOVETT | O.F. | 12/21/2011 | Nerve Block Injections | $1,330.00 |
| 3 TROTTER FREEMAN LOVETT | U.K. | 12/20/2012 | Nerve Block Injections | $1,150.00 |
| 4 TROTTER FREEMAN LOVETT | U.K. | 1/24/2013 | Nerve Block Injections | $1,150.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. § 982—Criminal Forfeiture)

55.     The allegations contained in Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendants JOHNNY TROTTER, II, M.D., ANDREW HARDY, JR., M.D., ELAINE LOVETT, and MICHELLE FREEMAN pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

56.     Pursuant to Title 18, United States Code, Section 982(a)(7) and 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being

18

convicted of violating Title 18, United States Code, Section 1349 as charged in Count 1 of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

57.   Money Judgment:  A sum of money equal to at least $9,533,565.40 in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of defendants' violations of Title 18, United States Code, Section 1349 as alleged in Count 1 of this Indictment.

58.   Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other

19

property of JOHNNY TROTTER, II, M.D., ANDREW HARDY, JR., M.D.,

ELAINE LOVETT, and MICHELLE FREEMAN up to the value of such property.

THIS IS A TRUE BILL.

s/GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
United States Attorney

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
wayne.pratt@usdoi.gov

s/ CHRISTOPHER J. CESTARO
CHRISTOPHER J. CESTARO
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 714-0735
christopher.cestaro@usdoj.gov

s/CATHERINE K. DICK
CATHERINE K. DICK
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 538-4049
catherine.dick@usdoj.gov

s/KATIE R. FINK
KATIE R. FINK
Special Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 957-2976, (313) 226-0295
katie.fink@usdoj.gov

Date:  May 8, 2014

# ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case:2:14-cr-20273<br>Judge: Steeh, George Caram<br>MJ: Grand, David R.<br>Filed: 05-08-2014 At 04:13 PM<br>SEALED MATTER (LG) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [  ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: _KRF_ |

Case Title: USA v.  Johnny Trotter II, M.D. et. al. _____

County where offense occurred : Oakland _____

Check One:    ☒ **Felony**              ☐ **Misdemeanor**              ☐ **Petty**

_____Indictment/_____Information --- **no prior complaint.**
__✓__Indictment/_____Information --- based upon prior complaint [Case number: 13-mj-30764                    ]
_____Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: _____          Judge: _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 8, 2014
_____
Date

*Katie R. Fink*
_____
KATIE R. FINK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W. 3rd Floor
Washington, D.C. 20005
Phone:  (202) 957-2976, (313) 226-0295
E-Mail address: Katie.Fink@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.                                                                04/13